UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>JOSE OSCAR BAEZ-BEJARANO;<br>JORGE SIERRA<br><br>Defendants. | Case No. 4:21-cr-00103-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Motions to Sever filed by Defendants Jose Oscar Baez-Bejarano (Dkt. 83) and Jorge Sierra (Dkt. 84). The Government filed Responses opposing the Motions. Dkts. 88–89. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motions.

## II. BACKGROUND

This case began with Melvin Misael Alcaraz-Valdez and Hector Manuel Rojo-Leyva's arrests and post-arrest statements on March 8, 2021. Dkt. 1. In some way, all facets

of this case stem from the information gleaned from those original statements, ultimately leading to further indictments. *Compare* Dkt. 1 *with* Dkt. 27.

On April 14, 2021, the Grand Jury issued a six-count indictment charging eight Defendants in various drug-related offenses. Dkt. 27. Count I alleged that all eight Defendants engaged in a conspiracy to distribute large quantities of mixed and actual methamphetamine. *Id.* at 1–2. Counts II through VI involved possession with intent to distribute on various dates.[1] *Id.* at 1–4. Baez-Bejarano and Sierra, along with three of their Codefendants, were only indicted on Count I. *Id.* at 1–2.

Baez-Bejarano filed his Motion to Sever on May 7, 2021. Dkt. 83. The Motion is based on two premises. First, the jury will be unable to compartmentalize the evidence as it relates to him. *Id.* at 2. Second, failure to sever will lead to a violation of his Sixth Amendment rights. Dkt. *Id.* at 3.

Sierra filed his Motion to Sever on May 10, 2021. Dkt. 84. He asserts that using Alcaraz-Valdez's out-of-court statements incriminating Sierra would deny him of his rights under the Confrontation Clause and have an undue prejudicial effect on him. *Id.* at 3–4.

The Government filed a Response in opposition to Baez-Bejarano's Motion (Dkt. 88) and Sierra's Motion (Dkt. 89).[2] The Government asserts that Baez-Bejarano and Sierra are not entitled to severance under Federal Rule of Criminal Procedure 14 because they have not met their heavy burden of demonstrating undue prejudice. Dkt. 88, at 2–3. The

---

[1] Alcaraz-Valdez is the only Defendant charged in every count.

[2] The Responses are virtually the same, so only one will be cited.

Government further argues that Defendants have failed to allege a constitutional violation warranting this Court to exercise its discretion to sever the Defendants from the rest of the conspiracy. And, although the Government agrees that some Codefendants' admissions implicate *Bruton*, it contends that all impermissible implications will be remedied by redacting portions of any Codefendants' admission that implicates or references Baez-Bejarano and Sierra.

### III. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 8, a prosecutor may elect to charge multiple counts and defendants in one trial. The primary justification for joinder is efficiency. 1A C. Wright & A. Miller, Federal Practice and Procedure § 142 (5th ed. 2021). Other vital interests served through joinder include judicial economy, reliability, and consistency. *Id.* Together, these interests have created "a preference in the federal system for joint trials of defendants who are indicted together," for "[j]oint trials play a vital role in the criminal justice system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Specifically, regarding joinder of defendants, Rule 8(b) provides that "[t]he indictment … may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." It further states that "[t]he defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Rule 8(b) balances "the need to avoid the potential prejudice that may result form joining multiple defendants with the need to attain trial efficiency." *United States v. Adams*, 581 F.2d 193, 197 (9th Cir. 1978).

Rule 14 operates in close conjunction with Rule 8 and empowers courts to provide relief from prejudicial joinder, including ordering separate trials of counts, severing the defendants' trial, or providing any other relief that justice requires. Fed. R. Crim. P. 14(a).[3] And "once defendants are properly joined under Rule 8(b), courts routinely apply the presumption that parties who are indicted together should be tried together. Wright & Miller, *supra*, § 224.

Consequently, if defendants were properly joined under Rule 8(b), "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (cleaned up). Naturally then, "the burden is on the defendant to make a strong showing of prejudice to obtain the relief permitted by Rule 14." *Id.*; *see also United States v. Hanley*, 190 F.3d 1017, 1029 (9th Cir. 1999), *superseded on other grounds by* U.S.S.G. 2S1.1 ("A criminal defendant who seeks reversal of a trial court's denial of a motion to sever bears a heavy burden.").

## IV. DISCUSSION

### A. Joinder

The Court first addresses whether joinder of the Defendants was appropriate and, ultimately, finds that it was.

---

[3] Additionally, regarding a defendant's statements, courts can order government attorneys "to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." Fed. R. Crim. P. 14(b).

Federal Rule of Civil Procedure 8(b) permits the Government to join Defendants in one trial, as long as the counts arise from the same series of acts or transactions constituting an offense or offenses. Moreover, "all defendants need not be charged in each count." Fed. R. Crim. P. 8(b). So, even though all Defendants must have somehow participated in the series of acts from which the charges arose, Rule 8(b) does not require each Defendant to have participated in every act or transaction in the alleged series. Wright & Miller, *supra*, § 145. Rule 8 is thus generally treated as a pleading rule, and courts determine the propriety of joinder based on the allegations in the indictment.

Although Baez-Bejarano and Sierra have only been charged in the conspiracy count, the Government appropriately joined the Defendants together in the Indictment. Joint trials for defendants are the standard. *Zafiro*, 506 U.S. at 537. And this is even more true for conspiracy cases. *Adams*, 581 F.2d at 597 (a conspiracy count provides the necessary link to satisfy the requirement of Rule 8(b)); Wright & Miller, *supra*, § 145 ("codefendants charged with conspiracy should generally be tried together."). Baez-Bejarano and Sierra were both charged with conspiracy to distribute illicit drugs, and the other five counts against their Codefendants directly stem from the alleged conspiracy. So, because of the strong preference for joinder, especially in conspiracy cases like this, the Court readily finds that joinder was proper. Having found the Defendants properly joined, the Court turns its focus to severance.

### B. Severance

While the lodestar of Rule 8 is efficiency, Rule 14's telos is mitigating any

prejudicial effect proper joinder might present.[4] Trials involving more than one defendant naturally create risks for the accused, such as being found guilty by association or the jury failing to distinguish defendant-specific pieces of evidence. Wright & Miller, *supra*, § 224. And "these risks become especially acute in conspiracy cases, where the presence of an overarching agreement makes joinder proper as a matter of course." *Id.* (cleaned up). Even so, any prejudicial effect joinder might have cannot overcome the preference for a joint trial unless there is a serious risk of compromising a specific trial right or prevent the jury from making a reliable decision. *Zafiro*, 506 U.S. at 539.

Baez-Bejarano and Sierra both raised two reasons seemingly warranting severance. First, they allege that the jury may not be able to compartmentalize evidence. Second, they argue that the potential use of their Codefendants' statements would upend their Sixth Amendment rights. The Court is not persuaded by either.

1. *The Jury's Reliability*

"The ultimate question on whether the jury can make a reliable determination of guilt is whether the jury was able to compartmentalize the evidence as it relates to separate defendants." Wright & Miller, *supra*, § 224 (cleaned up). Baez-Bejarano and Sierra suggest for a number of reasons that, unless they are severed from the joint trial, the jury will not be reliable. Baez-Bejarano specifically argues that he should be severed because he is only

---

[4] Still, in reviewing a claim for severance, "[s]erious consideration must be given to judicial economy." *U.S. v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 157 (2019).

charged with one count and has no prior criminal record.[5] Dkt. 83, at 2–3. For these reasons, he believes that a joint-trial jury would impute guilt by implication. *Id*. Sierra likewise argues that it is unreasonable to expect any jury to compartmentalize the evidence against Alcaraz-Valdez from spilling over to prejudice Sierra, even if the jury was given limiting instructions. Dkt. 84, at 4–6. These arguments have been made before and have been found wanting.

Under *Zafiro*'s austere standard, courts routinely reject severance motions based on similar claims. Wright & Miller, *supra*, §224 (collecting cases) (including codefendants having different levels of culpability; other defendants having a criminal record; hostility or conflict of interest between the defendants). Although the "antagonistic nature of the co-defendants' defenses remains relevant, the party moving to sever often finds it difficult to succeed merely because the joint trial will feature conflicting defenses." *Id.*; *see also United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011). Moreover, "[t]he mere fact that evidence may be admissible against one defendant but not against others does not itself require separate trials, but the fact that the same evidence would be admissible against all defendants in separate proceedings is routinely used to justify a joint trial." *Id.* Nothing in the Motions persuades the Court to depart for the usual course of action and grant severance. Severing would be an extreme action in remedying any potential prejudicial effect.

Furthermore, severing Defendants is not the sole means the Court can employ to

---

[5] This is inaccurate. Baez-Bejarano has a prior criminal record. *See Idaho v. Baez-Bejarano*, CR20-18-00447 (Feb. 13, 2018).

mollify Baez-Bejarano and Sierra's concerns. Rule 14(a) permits the Court to "provide any other relief that justice requires." Courts traditionally employ jury instructions to correctly corral any prejudicial evidence. *See, e.g.*, *Zafiro*, 506 U.S. at 539 (reasoning that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *see also United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011) ("Where the district court uses great diligence in instructing the jury to separate the evidence, severance is unnecessary because the prejudicial effects of the evidence of codefendants are neutralized."). The Court, therefore, will not abandon its "great faith in the efficacy of cautionary jury instructions to mitigate any prejudice that might arise." Wright & Miller, *supra*, § 224. Severing Baez-Bejarano and Sierra would needlessly cast doubt on juries—"the heart and lungs of liberty." John Adams, I *Diary and Autobiography* 296–99 (ed. L.H. Butterfield et al. 1961) (cleaned up). This is also true regarding Baez-Bejarano and Sierra's more meritorious Sixth Amendment arguments.

 2. *The Confrontation Clause and* Bruton

Having determined that a joint trial would not prevent a jury from making a reliable judgment about guilt or innocence, the Court turns to *Zafiro*'s other consideration: whether a joint trial would seriously risk compromising a specific trial right. 506 U.S. at 539.

The Motions asserted, and the Government conceded, that Codefendants have made specific admissions incriminating Baez-Bejarano and Sierra. *See* Dkt. 88, at 5. Baez-Bejarano and Sierra argue that utilizing such statements would violate their Sixth Amendment rights contained in the Confrontation Clause, as well as the corresponding

*Bruton* Rule. The Government agrees, but it believes that any constitutional maladies caused by those statements can be cured. The Court agrees with the Government.

Under the Sixth Amendment's Confrontation Clause, criminal defendants have the right "to be confronted with witnesses against" them. "A defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201 (1987) (articulating the *Bruton* Rule); *see also United States v. Parks*, 285 F.3d 1133, 1138 (9th Cir. 2002).[6] However, the *Bruton* Rule is not violated when "the confession is redacted to eliminate not only the defendant's name but any reference to his or her existence." *Id.* at 211.

At trial, the Government intends to admit any Codefendant's post-arrest admissions incriminating himself. Dkt. 88, at 5. And it will also omit any post-arrest statements made to investigations by a codefendant that identifies or inculpates Baez-Bejarano and Sierra, or any other Defendant for that matter. *Id.* at 5–6. Although these procedures presumably mitigate any *Bruton* issue, the Government must toe a fine line. By denying this Motion, the Court is not giving the Government carte blanche.

Although the Government's plan has sufficiently satisfied the Court at this juncture, the Government must vigilantly ensure that its use of any Codefendants' statements will

---

[6] It is also important to note that the *Bruton* Rule only applies "to testimonial out-of-court codefendant statements." *Lucero v. Holland*, 902 F.3d 979, 984 (9th Cir. 2018); *see also Crawford v. Washington*, 541 U.S. 36, 68 (2004). The statements at issue in this case obviously implicate the *Bruton* Rule. The key is whether or not any *Bruton* rule can be cured.

MEMORANDUM DECISION AND ORDER - 9

not be impermissibly used against Baez-Bejarano, Sierra, or any other Codefendant. Likewise, the Court has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960) (especially if "charge which originally justified joinder turns out to lack the support of sufficient evidence."). And, if the Court becomes unsatisfied with the Government's preventative procedures, nothing restrains the Court from severing the Defendants sua sponte. Fed. R. Crim. P. 14(a).

To avoid such an outcome, the Government must ensure that omissions and redactions sufficiently cure any *Bruton* issues. But "this process can be more complicated than it sounds." Wright & Miller, *supra*, § 225. Simply removing the Defendants' names may not be enough. "Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration leave statements that so closely resemble *Bruton*'s unredacted statements that the law must require the same result."[7] *Gray v. Maryland*, 523 U.S. 185, 186 (1998) (cleaned up). This is for three reasons. First, the redaction might not be materially distinguishable from the unredacted confession, so the jury will "realize that the confession refers specifically to the defendant." *Gray v. Maryland*, 523 U.S. 185, 186 (1998). Second, an obvious deletion "may well call the jurors' attention specifically to the removed name." *Id.* "By encouraging

---

[7] *See also* Wright & Miller, supra, § 245. ("Sometimes removing references to the other defendants will make the statement incoherent. Other times it can create the false impression that defendant acted alone. To combat these problems, prosecutors have tried replacing the name of the other, non-speaking defendant with a letter or symbol, indicating that another person was involved but not implicating the defendant by name. Even this procedure has risks, however, as it may still highlight the fact that another person was involved, and the context can make it obvious that codefendant is that person.").

the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference. *Id.* Third, "*Bruton*'s protected statements and statements redacted to leave a blank or some other similarly obvious alternation, function the same way grammatically: They point directly to, and accuse, the nonconfessing codefendant." *Id.* So, with these potential hazards in mind, the Government must tread lightly to ensure that any redactions sufficiently protect all Defendants' constitutional rights.

Furthermore, although redactions can solve a *Bruton* defect, there is not a bright line delineating an insufficient redaction. *See Johnson v. Superintendent Fayette SCI*, 949 F.3d 791, 796 (3d Cir. 2020). Instead, "courts take a holistic approach when considering redacted confessions by viewing the redaction in the context of the entire record. *Id.*; *see also* Wright & Miller, *supra*, § 225 ("Their validity will depend a great deal on the details."). At this juncture, the Court has not viewed the confessions or statements that require redaction. But, if the Court ends up finding such measures insufficient, the Court will take further action to ensure that Defendants' rights are protected. In addition to the Court proactively safeguarding the Defendants' constitutional rights at trial, nothing prevents Baez-Bejarano or Sierra from filing further mitigating motions, such as motions in limine or proposed jury instructions.

### V. CONCLUSION

In this instance, joinder was inarguably appropriate. Baez-Bejarano and Sierra did not sufficiently bear their heavy burden of demonstrating prejudicial joinder. The Court will therefore not sever the Defendants under Rule 14 at this time. That said, the

Government and Defendants should prudently prepare for trial, ensuring that all Defendants' constitutional rights will be upheld.

## VI. ORDER

The Court HEREBY ORDERS:

1. Baez-Bejarano's (Dkt. 83) and Sierra's (Dkt. 84) Motions to Sever are DENIED.

DATED: June 30, 2021

_____
David C. Nye
Chief U.S. District Court Judge